Sara Ghafouri, OSB #111021
Lawson E. Fite, OSB #055573
American Forest Resource Council
700 N.E. Multnomah, Suite 320
Portland, Oregon 97232
Telephone: (503) 222-9505
Fax: (503) 222-3255
Email: sghafouri@amforest.org
Email: lfite@amforest.org

Attorneys for Proposed Defendant-Intervenors

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### MEDFORD DIVISION

| | |
|---|---|
| **KLAMATH-SISKIYOU WILDLANDS CENTER, OREGON WILD,** and **CASCADIA WILDLANDS**,<br><br>　　　　Plaintiffs,<br><br>　　　　vs.<br><br>**UNITED STATES FISH AND WILDLIFE SERVICE**,<br><br>　　　　Defendant,<br>　　　　　　　　and<br><br>**BOISE CASCADE WOOD PRODUCTS, L.L.C.**, a Delaware Limited Liability Corporation, and **TIMBER PRODUCTS COMPANY**, an Oregon Corporation.<br><br>　　　　Proposed Defendant-Intervenors.<br>　　　　_____ | Civil No. 1:21-cv-00058-CL<br><br>**MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT** |

## LR 7-1(A) CERTIFICATION

Proposed defendant-intervenors Boise Cascade Wood Products LLC, and Timber Products Company, by counsel, hereby certifies that undersigned counsel conferred with counsel for plaintiffs and counsel for Federal Defendant on April 14, 2021. Plaintiffs take no position on the motion and Federal Defendant does not oppose the motion to intervene.

## MOTION

Pursuant to Fed. R. Civ. P. 24, Boise Cascade Wood Products LLC, and Timber Products Company (Proposed Intervenors), respectfully move to intervene as defendants in this case challenging the U.S. Fish and Wildlife Service's July 24, 2020 Biological Opinion analyzing the impacts of the Bear Grub Vegetation Management Project and the Round Oak Forest Management Project on the northern spotted owl, a species listed under the Endangered Species Act.

The Court should grant intervention of right because Proposed Intervenors satisfy all four intervention factors. This motion is timely since plaintiffs recently filed their complaint on January 14, 2021, and Federal Defendant filed its Answer on April 2, 2021. Proposed Intervenors have a significant protectable interest in the litigation because they have either been awarded or are the high bidder (and will be awarded) the timber sale contracts associated with implementing portions of the Bear Grub and Round Oak Projects. Proposed Intervenors' interests will be adversely affected if plaintiffs are successful in vacating the 2020 Biological Opinion. Finally, Federal Defendant does not adequately represent Proposed Intervenors in this litigation.

In the alternative, the Court may also grant permissive intervention because Proposed Intervenors' claims and defenses share common questions of law and fact with the main action.

This motion is supported by the accompanying memorandum, the Declaration of Mark Nystrom, the Declaration of Jeremy Wuerfel, and a proposed answer.

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

### I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 24, Boise Cascade Wood Products, L.L.C. (Boise Cascade) and Timber Products Company (Timber Products) (collectively, Proposed Intervenors) respectfully move to intervene as defendants. At issue in this litigation is the U.S. Fish and Wildlife Service's (FWS) July 24, 2020 Biological Opinion (2020 BiOp) for the Bear Grub Vegetation Management Project (Bear Grub Project) and the Round Oak Forest Management Project (Round Oak Project).

The Bear Grub Project is located in the Bureau of Land Management (BLM) Medford District (Ashland Field Office), just south of Jacksonville and east of Ruch in Jackson County, Oregon. Bear Grub Environmental Assessment (EA) at 4.[1] The project consists of commercial and non-commercial treatments within the Harvest Land Base (HLB), Late-Successional Reserve Dry (LSR-Dry), District-Designated Reserves, and Riparian Reserve-Dry land use allocations. *Id*. The project has four purposes and needs: (1) implement commercial timber harvest to contribute to the Allowable Sale Quantity (ASQ) required under the 2016 Record of Decision /Resource Management Plan (ROD/RMP) management direction; (2) implement integrated vegetation management in LSR-Dry land use allocation; (3) implement thinning in Riparian Reserve-Dry land use allocation within Class I and II Subwatersheds; and (4) modify the fuel profile to reduce fire behavior and intensity. Bear Grub EA at 7-8.

---

[1] The Bear Grub EA is available at
https://eplanning.blm.gov/public_projects/1501673/200337780/20019679/250025883/Bear%20Grub%20EA%20and%20Appendices_6-15-2020.pdf.

MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT – Page 2

Proposed Intervenor Timber Products was the high bidder for the Bear Grub Timber Sale, which will implement a 702-acre commercial portions of the project. Wuerfel Decl. ¶ 23. Timber Products is a family-owned business headquartered in Springfield, Oregon, producing high-end hardwood plywood and high-grade softwood products. *Id.* ¶ 4. Timber Products specializes in producing wood panels and veneers, which are applied to wall panels, furniture, cabinets, and musical instruments. *Id.* ¶ 5. Timber Products has a veneer mill in Yreka, California; a particle board plant and hardwood plywood facility in Medford, Oregon; a plywood facility in Grant Pass, Oregon; a "Spectrum" facility in White City, Oregon; and a particle facility in Sutter Creek, California. *Id.* ¶¶ 8-12. Overall, Timber Products employs about 1,229 workers company-wide, with 800 employees located in Southern Oregon. *Id.* ¶ 15.

To date, the BLM has not provided a response to administrative protests to the Bear Grub Timber Sale Decision Record and, consistent with BLM policy, the agency has not officially awarded Timber Products the contract. *Id.* ¶ 23. The timber sale will generate approximately 12.027 million board feet (MMBF) and the harvest activities will take place over a 36-month period. *Id.* ¶¶ 21-22. Once awarded the contact, Timber Products will pay the government $1,085,651.20, and this money will fund vital public services in Jackson County pursuant to the governing statute, the O&C Act.[2] *Id.* ¶ 23; 43 U.S.C. § 2605(a) (providing that 50% of timber sale revenue is distributed to counties).

The Round Oak Project is located in the BLM Medford District (Butte Falls Field Office), within the South Fork Rogue River and Beaver Dam Creek sub-watersheds in Jackson

---

[2] Oregon and California Railroad and Coos Bay Wagon Road Grant Lands Act of 1937, 43 U.S.C. §§ 2601-2606.

County, Oregon. Round Oak Project EA at 1.[3] The project's purposes and needs is to conduct timber harvest within the selected stands in the HLB land use allocation to produce timber to contribute to the attainment of the declared ASQ for the Medford Sustained Yield Unit (SYU) in fiscal years 2020 and 2021 and "[t]o treat natural hazardous fuels within the selected stands in the planning area to reduce wildfire hazard and increase fire resistance in those stands." Round Oak EA at 3.

Proposed Intervenor Boise Cascade was awarded the timber sale contracts for the Ranchero Timber Sale and Lodgepole Timber Sale on April 14, 2021. Nystrom Decl. ¶¶ 13, 22. Boise Cascade is headquartered in Boise, Idaho and manufactures various wood products, including engineered wood products (EWP), plywood and ponderosa pine lumber. *Id*. ¶ 4. In Western Oregon, Boise Cascade owns and operates veneer mills in Willamina and White City, the Rogue Valley plywood mill in White City, and a plywood mill in Medford. *Id*. ¶ 5. The Rogue Valley and Medford plywood mills produce parallel laminated veneer plywood used for Boise Cascade's EWP facility in White City. *Id*. Boise Cascade's Western Oregon manufacturing operations employ 717 workers, providing much-needed family-wage jobs, health care benefits, and other benefits. *Id*.

The Ranchero Timber Sale involves timber harvest, follow-up fuels treatments, and planting activities on approximately 577 acres and will generate about 15.043 MMBF. *Id*. ¶¶ 12, 14. The Lodgepole Timber Sale involves timber harvest and follow-up fuels treatment on approximately 460 acres and will generate about 11.219 MMBF. *Id*. ¶¶ 21, 23. Boise Cascade will pay the government $4,988,766 for the Ranchero Timber Sale and $3,447,956 for the

---

[3] The Round Oak Project EA is available at, https://eplanning.blm.gov/public_projects/nepa/1501198/20018787/250024906/Round_Oak_Project_EA.pdf.

MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT – Page 4

Lodgepole Timber Sale, and this money will fund vital public services in Jackson County pursuant to the governing statute, the O&C Act. *Id.* ¶¶ 13, 22; 43 U.S.C. § 2605(a).

Timber Products and Boise Cascade have concrete interests in the Bear Grub and Round Oak Projects that would be adversely affected if the 2020 BiOp was vacated or the timber sale operations were delayed. This motion is timely, and the other parties do not adequately represent Proposed Intervenors. Therefore, Proposed Intervenors should be granted intervention as of right under Rule 24(a)(2). In the alternative, permissive intervention under Rule 24(b) should be granted.

## II.     ARGUMENT

### A.     **Standards for Intervention.**

Pursuant to Fed. R. Civ. P. 24(a)(2) a person may intervene as a matter of right when: (1) the applicant's motion is timely; (2) the applicant asserts an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that without intervention, the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties. *Cnty. of Orange v. Air California*, 799 F.2d 535 (9th Cir. 1986); *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002); *Wilderness Soc'y v. Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011) (*en banc*) (eliminating the "none but the federal defendant rule"). Although the burden of establishing the elements for intervention is on the applicant, "the requirements for intervention are broadly interpreted in favor of intervention." *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006); *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004); *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (emphasizing that "the requirements [for intervention] are broadly interpreted in

favor of intervention"); *Wilderness Soc'y*, 630 F.3d at 1179 (noting "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts" (internal quotation marks omitted)).

Rule 24(a)(2) "does not require a specific legal or equitable interest." *Wilderness Soc'y*, 630 F.3d at 1179. Rather, "[i]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* Moreover, an applicant's interest in the litigation is sufficient for purposes of Rule 24 so long as "it will suffer a practical impairment of its interests as a result of the pending litigation." *Id.* The Ninth Circuit construes Rule 24(a) liberally in favor of potential intervenors. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). The court is "guided primarily by practical considerations, not technical distinctions." *Id.* (internal quotation marks omitted).

In 2011, the Ninth Circuit, sitting *en banc*, abandoned its prior court-engrafted constraints on intervention and acknowledged that a motion for intervention should be evaluated based solely on Rule 24's intervention factors. *Wilderness Soc'y*, 630 F.3d at 1173. The unanimous *en banc* panel confirmed that an asserted interest need only relate to the "'property or transaction that is the subject of the action[,]'" and that it was improper to "focus[ ] on the underlying legal claim instead of the property or transaction that is the subject of the lawsuit" in evaluating an intervention motion. *Id*. at 1178 (quoting Rule 24(a)). "To determine whether putative intervenors demonstrate the 'significantly protectable' interest necessary for intervention of right . . . , the operative inquiry should be whether the 'interest is protectable under some law' and whether 'there is a relationship between the legally protected interest and the claims at issue.'" *Id*. at 1180. As such, Rule 24(a)(2) does not require a prospective intervenor to be potentially

liable to the plaintiffs "on the same grounds as the defendants." *Id.* at 1178-79.  It matters only that the purchaser has interests that may be affected by this litigation.

Under Fed. R. Civ. P. 24(b)(1)(B), the Court also has discretion to grant permissive intervention to anyone who upon timely motion has a claim or defense that shares with the main action a common question of law or fact.  In exercising its discretion, the Court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.  Fed. R. Civ. P. 24(b)(3).  Compared with intervention as of right, a district court has broad discretion in deciding a motion for permissive intervention pursuant to Rule 24(b).  *See generally Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1084, 1108-09, 1110-11 (9th Cir. 2002), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d at 1173.  Thus, unlike intervention as of right under Rule 24(a), permissive intervention has no protectable interest or adequacy of representation requirements and "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *Id.* at 1108 (internal quotation marks omitted).

    **B.**  <u>**Proposed Intervenors May Intervene as a Matter of Right**</u>.

Both Timber Products and Boise Cascade satisfy all four intervention factors.  Proposed Intervenors' motion is timely, there are protectable interests at stake, intervention is the only way to protect that right, and those interests are not adequately represented by Federal Defendant.  Therefore, Proposed Intervenors may intervene as a matter of right.

    **1.**  <u>**The motion is timely**</u>.

This motion is timely.  In determining whether a motion to intervene is timely, district courts weigh three factors: (1) the stage of the proceeding; (2) any prejudice to the other parties; and (3) the reason for and length of any delay.  *Cnty. of Orange*, 799 F.2d at 537.  However,

"[t]imeliness is a flexible concept" that is "left to the district court's discretion." *Alisal Water Corp.*, 370 F.3d at 921.

Plaintiffs filed their Complaint three months ago on January 14, 2021. Compl. (ECF No. 1). Federal Defendant filed its answer earlier this month, on April 2, 2021 (ECF No. 9). Proposed Intervenors have filed their motion to intervene shortly after Federal Defendant filed its answer. Proposed Intervenors waited to file their motion to intervene after Boise Cascade was awarded the contracts for the Ranchero and Lodgepole Timber Sale.

Intervention at this stage of the litigation would not be prejudicial because no party has engaged in any substantive proceedings at this time. *See, e.g.*, *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding that a motion to intervene was timely when it "was filed at a very early stage, before any hearings or rulings on substantive matters"); *Citizens for Balanced Use*, 647 F.3d at 897 (holding that a motion to intervene as of right was timely when the applicants filed their motion less than three months after the complaint was filed and less than two weeks after the answer was filed); *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (reversing denial of intervention where the proposed intervenors acted as soon as they had notice a settlement was contrary to their interests); *WildEarth Guardians v. Hoover*, No. 1:16-CV-65-M-DWM, 2016 WL 7388316, at *1 (D. Mont. Dec. 20, 2016) (finding that the parties would not be prejudiced by intervention because the proposed intervenor was able to follow briefing schedule already in place). Thus, the motion is timely.

> 2. **Proposed Intervenors have significant protectable interests at stake that relate to the subject matter of this litigation.**

Proposed Intervenors assert interests related to the subject of the proceeding. The Ninth Circuit interprets Rule 24(a) "liberally" and its "review is 'guided primarily by practical considerations, not technical distinctions.'" *Berg*, 268 F.3d at 818 (quoting *United States v.*

MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT – Page 8

*Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986)).  The Ninth Circuit has also "rejected the notion that Rule 24(a)(2) requires a specific legal or equitable interest." *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980); *Wilderness Soc'y*, 630 F.3d at 1179.  Rather, the interest test is "'primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Cnty. of Fresno*, 622 F.2d at 438 (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).  As explained below, Proposed Intervenors have protectable economic and property interests in their timber sale contracts to implement a portion of the Bear Grub and Round Oak Projects, which are implicated by the litigation.   Plaintiffs are challenging the 2020 BiOp that analyzed the impacts of both projects on the northern spotted owl and seek to vacate the 2020 BiOp and the Incidental Take Statement. Compl. at 27-28 (Prayer for Relief, ECF No. 1).

Timber Products was the high bidder for the Bear Grub Timber Sale, implementing the commercial portion of the Bear Grub Project, and Boise Cascade was awarded the contracts for the Ranchero and Lodgepole Timber Sales, implementing the commercial portions of the Round Oak Project.  Wuerfel Decl. ¶ 23; Nystrom Decl. ¶¶ 13, 22.  "[I]nterests in property are the most elementary type of right that Rule 24(a) is designed to protect."  7C Wright & Miller, Fed. Prac. & Proc. Civ. § 1908.1 (3d ed. 2007).  A timber contract that will be affected by the outcome of the litigation entitles the contractor to intervene as of right.  "Contract rights are traditionally protectable interests."  *Berg*, 268 F.3d at 820.  Interests "in the nature of real or personal property, contracts, or permits" are "plainly protectable" and "squarely in the class of interests traditionally protected by law." *Sierra Club v. EPA*, 995 F.2d 1478, 1482-83 (9th Cir. 1993).

Courts have consistently determined that timber sale contracts constitute a sufficient interest under Rule 24.  *See, e.g.*, *Ctr. For Biological Diversity v. Gould*, No. 1:15-CV-01329-

WBS-GSA, 2015 WL 6951295, at *2 (E.D. Cal. Nov. 10, 2015); *Bark v. Northrop*, No. 3:13-CV-01267-HZ, 2013 WL 6576306, at *3 (D. Or. Dec. 12, 2013); *Sequoia ForestKeeper v. U.S. Forest Serv.*, No. 1:07-CV-1690-LJO-DLB, 2008 WL 324013, at *3 (E.D. Cal. Feb. 5, 2008); *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (reversing a district court's denial of intervention to timber purchaser associations that had "legally protectable property interest in existing timber contracts"); *Cascadia Wildlands v. Carlton*, No. 6:16-CV-01095-JR, ECF No. 11 (D. Or. July 15, 2016) (granting a timber trade association's motion to intervene in a case challenging the Loafer Project on the Umpqua National Forest); *Cascadia Wildlands v. U.S. Forest Serv.*, No. 6:18-CV-00858-TC, ECF No. 20 (D. Or. Sept. 14, 2018) (Minute Order granting timber purchasers' intervention motion in case challenging the Quartz Project on the Umpqua National Forest); *Bark v. U.S. Forest Serv.*, No. 3:18-CV-01645-MO, ECF No. 14 (D. Or. Nov. 15, 2018) (granting a timber company's motion to intervene as the holder of a stewardship contract implementing a project on the Mt. Hood National Forest). In addition, this Court has held that the BLM's declaration of a successful high bidder for a timber sale is a sufficient "protectable interest" for purposes of intervention, even though a timber sale contract had yet to be awarded. *See Klamath Siskiyou Wildlands Ctr. v. United States Bureau of Land Mgmt.*, No. 1:19-CV-02069-CL, 2020 WL 1052518, at *2 (D. Or. Mar. 4, 2020).

Here, Boise Cascade was awarded the contracts for the Ranchero and Lodgepole Timber Sales on April 14, 2021. Nystrom Decl. ¶¶ 13, 22. Timber Products, however, has not been officially awarded the timber sale contract for the Bear Grub Timber Sale because the BLM is still working on responding to administrative protests associated with that project.[4] Under the

---

[4] The BLM issued new regulations that have eliminated the administrative protest process for sales offered after January 19, 2021. 85 Fed. Reg. 82,359 (Dec. 18, 2020). For timber sales associated with a forest management decision record issued after January 19, 2021, the forest

BLM's previous policy, upon denial of an administrative protest, the authorized officer may proceed with implementation of the project decision (*former* 43 C.F.R. § 5003.3(f) (2020)), typically referred to as "full force and effect," and award the timber sale contract.[5]  Like in *Klamath Siskiyou Wildlands Ctr*., Timber Products was the successful bidder of the timber sale and will post the required performance bond to be legally entitled the award of the contract. Wuerfel Decl. ¶¶ 23, 32.  Timber Products anticipates that it will be awarded the contract in the next two months.  *Id.* ¶ 23.  Accordingly, both Boise Cascade and Timber Products have significant economic protectable interests to intervene as of right.

In addition, Proposed Intervenors are depending on the timber generated from the two projects to maintain their current operations.  For Boise Cascade, both sales will collectively generate 26.262 MMBF, which equates to 78 days of mill work at the White City veneer facility. Nystrom Decl. ¶¶ 14, 23.  After the volume is processed at the White City veneer facility, it will be shipped to one of Boise Cascade's plywood mills to be laid up into panels for its EWP mill and the plywood market.  *Id.*  For Timber Products, the timber generated from the Bear Grub Timber Sale accounts for approximately 25 percent of the company's annual volume usage and would be processed at four of its facilities, three of which are located in Southern Oregon. Wuerfel Decl. ¶ 24.  The volume from these sales will also supply additional jobs to the community.  Boise Cascade anticipates that it will subcontract with other companies to handle different aspects of the sale, providing 33 additional jobs for each sale.  Nystrom Decl. ¶¶ 14-18, 24-28.  Timber Products also anticipates that it will subcontract with other companies to handle

---

management decision may, at the discretion of the BLM, go full force and effect when the decision is issued.  The decisions associated with the Bear Grub Project and Round Oak Project were issued before January 19, 2021 and are subject to the administrative protest process.
[5] The BLM's previous policy is available at https://www.blm.gov/sites/blm.gov/files/policies/im-or-2008-084_Att1.pdf.

MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT – Page 11

portions of the timber sale activities, providing approximately 39 additional jobs.  Wuerfel Decl. ¶¶ 27-29.

Finally, Proposed Intervenors have a broader economic interest in maintaining the supply of public timber on the market.  Meeting the declared ASQ on lands designated under the O&C Act (O&C lands), helps ensure a steady, local supply for the local forest products infrastructure.  Wuerfel Decl. ¶ 33; Nystrom Decl. ¶ 31.  The Decision Record for the Bear Grub Timber Sale noted that the selected alternative would contribute to meeting the Medford SYU ASQ, helping achieve the 40 percent variation allowed under the 2016 ROD/RMP for the combined ASQ for Fiscal Years 2020 and 2021.  Bear Grub Decision Record at 5-6.[6]  Similarly, the timber sales for the Round Oak Project will help achieve the 40 percent variation allowed under the 2016 ROD/RMP.  Round Oak FONSI at 8 (The combined effects of Alternative 4 . . . would be within the 40% annual variation allowed for ASQ in the SWO RMP").[7]  The commercial aspects of these projects are keeping with the O&C Act's requirement that "not less than the annual sustained yield capacity when the same has been determined and declared, shall be sold annually, or so much thereof as can be sold at reasonable prices on a normal market."  43 U.S.C. § 2601.  Companies like Proposed Intervenors who use public timber have "a broader interest in any litigation that might impede [their] ability to obtain timber from federal lands in the future." *Gould*, 2015 WL 6951295, at *2; *accord Native Ecosystems Council v. Marten*, No. 1:17-CV-153-M-DWM, 2018 WL 2364293, at *2 (D. Mont. May 24, 2018).  "Timber companies have direct and substantial interests in a lawsuit aimed at halting logging or, at a minimum, reducing

---

[6] The Bear Grub Decision Record is available at https://eplanning.blm.gov/public_projects/1501673/200337780/20027352/250033554/20200930_DR_FINAL.pdf.

[7] The Round Oak Finding of No Significant Impact is available at https://eplanning.blm.gov/public_projects/1501198/200333326/20023369/250029573/Round%20Oak%20FONSI_Final-signed.pdf.

MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT – Page 12

the efficiency of their method of timber-cutting." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3rd Cir. 1998) (reversing denial of a motion to intervene by timber companies and groups); *see also Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) (holding that "[t]he threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest").

The threat of this litigation to the timber supply supports Proposed Intervenors' interest in this litigation. The overall supply of timber will be affected by the outcome of this litigation—approximately 38.3 MMBF. Wuerfel Decl. ¶ 21; Nystrom Decl. ¶¶ 14, 23. For companies like Proposed Intervenors, the federal timber supply including timber from O&C lands, is crucial. Wuerfel Decl. ¶ 33; Nystrom Decl. ¶ 31. Thus, Proposed Intervenors have a direct and substantial interest in being able to harvest the timber offered through these projects, and a direct and substantial interest in ensuring sufficient timber supply from the BLM generally.

### 3. The disposition of this case would impair Proposed Intervenors' protectable interests.

Proposed Intervenors' interests in the Bear Grub and the Round Oak Projects will be impaired absent intervention. "If an absentee would be substantially affected in a practical sense by the determination made in an action, [it] should, as a general rule, be entitled to intervene." *Berg*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee's notes). The third prong of the intervention test often follows as a matter of course if the second prong is met. *See, e.g.*, *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it."); *Sequoia ForestKeeper v. Watson*, No. 16-CV-01865-AWI-JLT, 2017 WL 4310257, at *2 (E.D. Cal. Sept. 28, 2017); *Jackson v. Abercrombie*, 282 F.R.D. 507, 517 (D. Haw. 2012) (citing *Cal. ex rel. Lockyer*, 450 F.3d 436,

442 (9th Cir. 2006) (nothing that "[g]enerally, after determining that the applicant has a protectable interest, courts have 'little difficulty concluding' that the disposition of the case may affect such interest").

Here, the relief requested by plaintiffs would affect Proposed Intervenors interests. Plaintiffs take issue with FWS's conclusions that the timber sales associated with Bear Grub and Round Oak Projects are not likely to jeopardize the continued existence of the northern spotted owl or adversely modify its critical habitat. *See generally* Compl. (ECF No. 1). Plaintiffs request that the 2020 BiOp and Incidental Take Statement be vacated and remanded to FWS. Compl. (Prayer for Relief ¶¶ 2-6; ECF No. 1). Assuming this Court granted plaintiffs' requested relief, the BLM may suspend the projects while FWS prepares a new BiOp in accordance with this Court's order. Accordingly, an adverse decision would impact Proposed Intervenors' ability to implement the timber sale contracts and the only way for Proposed Intervenors to protect their interests is by actively participating in this case and to present its respective defenses and unique perspectives. *Sequoia ForestKeeper v. La Price*, No. 1:16-CV-0759-AWI-JLT, 2017 WL 56655, at *1 (E.D. Cal. Jan. 4, 2017) (holding that the purchaser's "protectable interests in the timber contract would be impaired" because plaintiffs' requested relief "would either entirely prevent or restrict [the purchaser] from harvesting timber and acting fully on its contracts"); *Watson*, 2017 WL 4310257, at *3 (same). Because the relief requested would adversely affect their rights, Proposed Intervenors have shown that the disposition of this action would as a practical matter impair its interests and satisfies the third intervention factor.

### 4. **Proposed Intervenors are not adequately represented by the Federal Defendant.**

Finally, Proposed Intervenors are not adequately represented by FWS. A proposed intervenor is adequately represented only if "(1) the interests of the existing parties are such that

they would undoubtedly make all of the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect." *Sw. Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153-54 (9th Cir. 1998); *see also Friant Water Auth. v. Jewell*, 23 F.Supp.3d 1130, 1149 (E.D. Cal. 2014).  The most important factor in assessing the adequacy of representation is "how the interest compares with the interests of existing parties." *Citizens for Balanced Use*, 647 F.3d at 898.  Intervention is also appropriate when the intervenor would "likely offer important elements to the proceedings that the existing parties would likely neglect." *Berg*, 268 F.3d at 823.  The burden of showing inadequate representation is "minimal." *Araraki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)).

The interests of Proposed Intervenors are certainly not represented by plaintiffs in this case.  Nor are they adequately represented by the Federal Defendant, as FWS has broader interests than Proposed Intervenors.  *See, e.g.*, *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (holding that the Forest Service "is required to represent a broader view than the more narrow, parochial interest of [proposed intervenors] the State of Arizona and Apache County"); *La Price*, 2017 WL 56655, at *1; *Watson*, 2017 WL 4310257, at *3 (noting that the purchaser had met its "minimal burden" by showing that the federal defendants' interests were more focused on the "broad public interest" and not focused on the economic interests of the purchaser in relation to the timber sale contracts).  When the government is the lead defendant, its representation of the public interest "may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use*, 647 F.3d at 899 (quoting *WildEarth*

*Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)). "Inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." *Forest Conservation Council*, 66 F.3d at 1499.

Here, Proposed Intervenors have private, vested economic interests in this matter that Federal Defendant does not share and cannot be expected to protect. Wuerfel Decl. ¶ 34; Nystrom Decl. ¶ 32. Proposed Intervenors have concerns relating to maintaining employment at their respective companies and for their third-party contractors that will implement portions of the timber sale activities, which is not the focus of FWS's concerns. Proposed Intervenors also add important elements to this proceeding regarding the economic impact of the projects, elements of public and private interest, and industry perspective and knowledge of forest management.

Nor does FWS adequately represent Proposed Intervenors' interests simply because the government will presumably defend the 2020 BiOp and Incidental Take Statement. "[M]erely because parties share a general interest in the legality of a program or regulation does not mean their particular interests coincide so that representation by the agency alone is justified." *American Horse Protection v. Veneman*, 200 F.R.D. 153, 159 (D.D.C. 2001). Similarly, in *Alliance for the Wild Rockies v. U.S. Forest Service.*, No. 1:15-CV-00193-EJL, 2016 WL 7626528, *2 (D. Idaho June 9, 2016), the district court granted project supporters' request to intervene. "The Federal Defendants' interest is more broadly focused on complying with the requirements of the applicable laws and regulations for management of the lands at issue. The proposed interveners, on the other hand, would defend the Project more vigorously than the Federal Defendants as they are parties with something to lose if this Project is not allowed to go forward." *Id.*

Proposed Intervenors have economic interests in the timber sale contracts which are narrower than FWS's broad interest in complying with the Endangered Species Act. This Court would benefit from Proposed Intervenor in presenting their perspectives on both the legal and factual issues in the case. This Court should grant intervention because Federal Defendant does not have the same economic and silvicultural interests as Proposed Intervenors and does not adequately represent those interests.

In sum, the Court should grant intervention as of right because Proposed Intervenors' motion is timely, there are protectable interests at stake, intervention is the only way to protect that right, and those interests are not adequately represented by Federal Defendant.

      C.     **<u>Alternatively, the Court May Grant Permissive Intervention.</u>**

District courts have broad discretion to grant permissive intervention. Fed. R. Civ. P. 24(b)(2). So long as an applicant's motion is timely and its "claim or defense and the main action have a question of law or fact in common," a court may grant permissive intervention. As timeliness is established, the sole issue for the court to consider is whether the proposed intervenor "asserts a claim or defense in common with the main action." *Kootenai Tribe,* 313 F.3d at 1110. In *Kootenai Tribe*, environmental groups were allowed to intervene under Rule 24(b) where they asserted "defenses of the Roadless Rule directly responsive to the claim for injunction," *id.* at 1110, along with "an interest in the use and enjoyment of roadless lands, and in the conservation of roadless lands, in the national forest lands subject to the Roadless Rule …." *Id.* at 1110-11. Permissive intervention "is readily permitted" when proposed intervenors demonstrate that "they have real economic stakes in the outcome and that the likelihood of future harm to their interest is significant." *Alabama v. U.S. Army Corps of Eng'rs*, 229 F.R.D. 669,

675 (N.D. Ala. 2005). And permissive intervention is especially appropriate when "intervention will contribute to the equitable resolution of this case." *Kootenai Tribe*, 313 F.3d at 1111.

Proposed Intervenors are seeking to participate in this case to defend the 2020 BiOp and Incidental Take Statement. Proposed Intervenors assert defenses against the main action, which share common questions of law and fact. The Court would benefit from hearing from Proposed Intervenors about the legal issues since it is the purchasers of the timber sale contracts who will suffer the most, if this Court were inclined to vacate the 2020 BiOp and Incidental Take Statement. Accordingly, this Court should grant permissive intervention even if it denies intervention as of right.

## III. CONCLUSION

Proposed Intervenors Boise Cascade and Timber Products respectfully request that the Court grant their Motion to Intervene as defendants in this case.

Dated this 16th day of April, 2021.

/s/ Sara Ghafouri
Sara Ghafouri, Ore. Bar #111021
Lawson E. Fite, Ore. Bar #055573
American Forest Resource Council
700 N.E. Multnomah, Suite 320
Portland, Oregon 97232
Telephone: (503) 222-9505
Fax: (503) 222-3255
Email: sghafouri@amforest.org
Email: lfite@amforest.org

Attorneys for Proposed Defendant-Intervenors

## CERTIFICATE OF SERVICE

I, Sara Ghafouri, hereby certify that I, on April 16, 2021, I caused the foregoing to be served upon counsel of record through the Court's electronic service system.

Dated this 16th day of April, 2021.

/s/ Sara Ghafouri
Sara Ghafouri
