SANGYE INCE-JOHANNSEN (OSB #193827)
Western Environmental Law Center
120 Shelton McMurphey Blvd, Ste 340
Eugene, OR 97401
(541) 778-6626 | Phone
sangyeij@westernlaw.org

SUSAN JANE BROWN (OSB #054607)
Western Environmental Law Center
4107 NE Couch St.
Portland, OR 97232
(503) 914-1323 | Phone
brown@westernlaw.org

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
MEDFORD DIVISION

| | |
|---|---|
| KLAMATH-SISKIYOU WILDLANDS CENTER, OREGON WILD, and CASCADIA WILDLANDS, *Plaintiffs*, <br><br> v. <br><br> UNITED STATES FISH AND WILDLIFE SERVICE, *Defendant*, <br><br> and <br><br> BOISE CASCADE WOOD PRODUCTS, LLC, *Defendant-Intervenor*. | Civ. Case No. 1:21-cv-00058-CL <br><br> **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER / PRELIMINARY INJUNCTION** |

**I.     Introduction.**

Following the hearing on June 8, 2021, the Court requested that Klamath-Siskiyou Wildlands Center, Oregon Wild, and Cascadia Wildlands (collectively "KS Wild") provide supplemental briefing on two issues raised by defendants in their briefs opposing KS Wild's motion for a temporary restraining order and preliminary injunction in its action challenging the

1 – PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER / PRELIMINARY INJUNCTION

U.S. Fish and Wildlife Service (FWS)'s FY 2020 biological opinion (BiOp) for the Medford District Bureau of Land Management (BLM)'s Bear Grub and Round Oak timber sales. The following brief explains why FWS's argument that this action is barred under the doctrine of claim preclusion, and Intervenors' argument that BLM is a necessary party without which this litigation cannot proceed, both lack merit.

## II.     KS Wild is Not Precluded from Bringing This Action.

FWS erroneously alleges that KS Wild is precluded from challenging the FY 2020 BiOp because "[s]everal of Plaintiff's claims . . . are barred by the doctrine of claim preclusion[,]" on account of an earlier challenge to the 2016 BLM resource management plan (RMP) under which the timber sales evaluated in the FY 2020 BiOp were planned, (doc. 24, 18) (citing doc. 1, ¶ 89, 91, 92, 101, 104–07); *Pac. Rivers v. BLM*, Case No. 6:16-cv-01598-JR, 2019 WL 1232835 (D. Or. Mar. 15, 2019), *aff'd*, 815 F. App'x 107 (9th Cir. 2020). Not so. "Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). Res judicata only applies when there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between the parties." *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (internal citations omitted). Even if the second and third elements are met, the first—an identity of claims—is not.

"The central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (internal citations omitted). Here, there is no identity of claims between a 2017 challenge to the BLM's 2016 RMPs brought by some of the plaintiffs in the present case and the present challenge to the

FY 2020 BiOp because there are two separate and distinct "transactional nucleus of facts" involved.

The nucleus of facts in the 2017 challenge was BLM's 2016 decision to revise its RMPs, memorialized in a Record of Decision, and biological opinions prepared by FWS and National Marine Fisheries Service ("the Services") pertaining to the 2016 RMP. *Pac. Rivers Council v. BLM*, 6:16-cv-01598-TC (D. Or.) (doc. 32, First Amended Complaint); *see also Oregon Nat. Desert Ass'n v. Sabo*, 854 F. Supp. 2d 889, 913–14 (D. Or. 2012) ("The filing of the plaintiff's complaint frames the scope of litigation, establishing a transactional nexus into which facts and claims are fitted or excluded for purposes of claim preclusion.") (quoting *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1149 (10th Cir. 2006) and *L.A. Branch NAACP v. L.A. Unified School Dist.*, 720 F.2d 731, 739 (9th Cir. 1984)). In that challenge, Pacific Rivers argued that the 2016 RMP violated the Oregon and California Lands Act and NEPA, and that the biological opinions prepared by the Services violated the ESA and APA because the opinions did not utilize the best available science in arriving at their no jeopardy or destruction/adverse modification of critical habitat, or explain why abandoning the aquatic protections of the Northwest Forest Plan was warranted. *Id*. at ¶¶ 105–38. Pacific Rivers did not prevail in that challenge. 2019 WL 1232835 (D. Or. 2019), *aff'd*, 815 F. App'x 107 (9th Cir. 2020).

In the present litigation, by contrast, KS Wild challenges FWS' biological opinion for the Bear Grub and Round Oak timber sales, site-specific projects that implement the 2016 RMP, (doc. 1, 27–28 (Prayer for Relief)). The two lawsuits do not share a common set of facts, a common "transaction," or even a common final agency action, and FWS points to none. That BLM must comply with its RMP when it issues site-specific projects implementing that RMP does not somehow transform plaintiffs' challenge to the biological opinion for those site-specific

projects into an impermissible attack on the overarching land management plan and its biological opinions, and the government cites no authority for this proposition.[1]

Plaintiffs could not have brought a challenge to the FY 2020 BiOp in the 2017 litigation involving the 2016 RMP because the FY 2020 BiOp did not exist at that time. As the RMP states:

> The Proposed RMP does not include any implementation decisions to be included in the eventual Records of Decision/RMPs. That is, the BLM anticipates that all of the decisions in the Records of Decision/RMPs will be land use plan decisions. . . . Implementation decisions authorize implementation of on-the-ground projects. Land use plan decisions (land use allocations, management objectives, and management direction) do not directly authorize implementation of on-the-ground projects. Land use plan decisions guide and control future implementation decisions, which can be carried out only after completion of further appropriate NEPA analysis or documentation, consultation, and decision-making processes.

FWS AR 010769–70. Plaintiffs in the present case are not challenging the "general approach" adopted in the 2016 RMP, as FWS suggests, (doc. 24, 18), but rather specific legal deficiencies in the FY 2020 BiOp, which is an "implementation decision" envisioned by the RMP.

Because there is no identity of claims, KS Wild is not barred under the doctrine of res judicata from bringing this lawsuit at all. Nevertheless, FWS's contention that certain of KS Wild's specific claims are precluded warrants further discussion, as they serve to highlight how

---

[1] In the federal land management context, this court and others have rejected the application of res judicata where a later case was based on different site-specific facts, or site-specific facts for a decision not yet made the time the operable complaint in the first case was filed. *See Or. Nat. Desert Ass'n v. Sabo*, 854 F. Supp. 2d 889, 913–14 (D. Or. 2012) (prior action against annual operating instructions for cattle grazing in national forest did not bar subsequent action challenging operating instructions issued after that complaint was filed); *Idaho Sporting Congress v. Rittenhouse*, 305 F.3d 957, 964–65 (9th Cir. 2002) (rejecting application of res judicata where subsequent case challenged different timber sales prepared under the same management plan and under similar legal theories, because it was based on a different, site-specific set of operative facts).

4 – PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER / PRELIMINARY INJUNCTION

KS Wild could not have brought these claims in the earlier litigation challenging the 2016 RMP.[2]

In particular, FWS contends that KS Wild's "attacks on BLM's 'no-take' strategy, [and] the survey methodology utilized to identify occupied habitat, . . . stem from the same transactional nucleus of facts as Plaintiffs' prior lawsuit—BLM's decision to approve the 2016 RMP based on the analyses provided in the accompanying Final Environmental Impact Statement and BiOp prepared by Federal Defendants[,]" (doc. 24, 20). But KS Wild did not know at the time that FWS would rely on survey protocols alone in determining zero occupancy. Nor could it have: as KS Wild has pointed out, the agencies' own guidance at the time called for basing incidental take determinations on a site-specific analysis of spotted owl occupancy taking into account habitat fitness metrics, consistent with the best available science and past practice. Information Bulletin, 15 (Pls' Exhibit H, doc. 16-1, 617). More fundamentally, KS Wild did not and could not know that the agencies would implement the "no-take strategy" in individual timber sales by relaxing the definition of incidental take from past practice, rather than—consistent with the RMP's clear direction—not carrying out timber sales that would result in incidental take. FWS AR 010863. Without this knowledge and foresight, the RMP's "no-take" strategy would appear a more protective standard that KS Wild would have had no reason or legal basis to challenge in its facial challenge to the 2016 RMP.

And with respect to FWS's contention that KS Wild is precluded from challenging the FY 2020 BiOp's reliance on certain Project Design Criteria (PDCs) and other assumptions that are not reasonably specific, certain to occur, or subject to guidelines or otherwise enforceable obligations in concluding no jeopardy, (doc. 24, 18, citing doc. 1, ¶ 101), this too misses the

---

[2] FWS does not appear to contend that KS Wild's claim challenging the BiOp's failure to consider effects to "floater" owls is barred by claim preclusion, *see* (doc. 24, 18) (omitting doc. 1, ¶ 90 from the list of claims purportedly barred).

5 – PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER / PRELIMINARY INJUNCTION

mark. The specific measures and assumptions relied upon vary among the biological opinions for timber sales planned under the 2016 RMP. KS Wild did not know, nor could it have known, which PDCs, measures, and assumptions FWS would rely on in granting its imprimatur to individual site-specific timber sales through issuance of project-specific biological opinions.

Whatever "general approach" the 2016 RMP adopted, (doc. 24, 18), the devil is in the details. The specific deficiencies in the FY 2020 BiOp KS Wild challenges in this litigation did not yet exist at the time KS Wild filed its complaint in the *Pacific Rivers* litigation. To the extent FWS faults KS Wild for not divining the emergence of these specific deficiencies from the 2016 RMP's "general approach" to land use allocations and take avoidance, any such claim would almost certainly have been speculative and unripe. *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 722–23, 738 (1998) (holding that substantive challenges to programmatic land management plans are generally unripe until a site-specific implementation decision is made, although procedural claims "can never get riper"). Because KS Wild did not and could not have brought these claims in the *Pacific Rivers* litigation, there is no identity of claims, and this action is not precluded by principles of res judicata.

**III.   Intervenors' Joinder Argument Lacks Merit, Because BLM is Not a Necessary Party.**

For their part, Intervenors argue that KS Wild's decision to challenge FWS's FY 2020 BiOp alone, and not join BLM as a defendant with a separate claim under the ESA citizen suit provision, prevents this Court from granting the injunctive relief KS Wild has requested. But as novel as Intervenors' argument is, it is based on a series of flawed premises contradicted by binding precedent at every level of the federal judiciary.

First, contrary to Intervenors' assertion, (doc. 22, 11), a preliminary injunction is an available remedy. Here, KS Wild's complaint requested "such other and further relief as the

Court may deem just, proper, and necessary," (doc. 1, 28); *see Rental Development Corp. of America v. Lavery*, 304 F.2d 839, 842 (9th Cir. 1962) (upholding equitable relief on basis of a similar prayer); *see also N.Y. State Rifle & Pistol Ass'n v. City of New York*, 140 S.Ct. 1525, 1535 (2020) ("[W]hile the amended complaint does not expressly seek damages, it is enough that [the complaint] requests '[a]ny other such further relief as the [c]ourt deems just and proper.' . . . Under modern pleading standards, that suffices.") (Alito, J., dissenting on other grounds). Regardless, it is not necessary to specifically request injunctive relief in the complaint in order to obtain a preliminary injunction. Rather, preliminary injunctive relief is available if there is

> a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint. This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself. The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.

*Pac. Radiation Oncology v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (adopting the test from *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994), and quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)).[3] Here, temporarily setting aside the FY 2020 BiOp and ITS is "of the same character" as relief requested in the complaint, namely setting aside the FY 2020 BiOp and ITS, *see* (doc. 1, 28) (Prayer for Relief).

This case is not like *Devose*, where the motion for preliminary relief "raised issues entirely different from those presented in [the] complaint." *Devose*, 42 F.3d at 471 (prisoner's

---

[3] "In the context of the ESA, 'the test for determining if equitable relief is appropriate is whether an injunction is necessary to effectuate the congressional purpose behind the statute.'" *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 795 (quoting *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 (9th Cir. 2002)). "We therefore have held that injunctive relief was necessary to effectuate Congress's clear intent by requiring compliance with the substantive and procedural provisions of the ESA." *Id*. at 795–96. Here, KS Wild seeks an injunction in order to protect a listed species and its habitat pending final disposition of whether FWS complied with substantive and procedural provisions of the ESA.

original complaint alleged Eighth Amendment violations concerning a denial of adequate medical treatment in connection with injury, then later sought a preliminary injunction to enjoin prison officials from alleged retaliation by filing certain disciplinary charges against him and making him work beyond his capabilities). The other case Intervenors rely on, *Garcia v. Google*, is even less apt. 786 F.3d 733 (9th Cir. 2015). In that case, an actress who had received death threats for her performance in an unreleased film later incorporated in an anti-Islamic video and released online, brought copyright claims against the director and website owner seeking to have the video taken down. The actress then applied for a temporary restraining order, alleging grave danger to her life. The Ninth Circuit denied her application, holding that because the actress sought a relief under copyright law, her alleged irreparable harm "must stem from copyright—namely, harm to her legal interests as an author." *Id*. at 744. By contrast, here, the irreparable harm KS Wild seeks to enjoin stems from violations of the ESA, which is the same substantive law KS Wild alleged violations of in its APA claims.

Moreover, there *is* something to enjoin after a Biological Opinion is issued, despite Intervenors' argument to the contrary, (doc. 22, 11). In *Bennett v. Spear*, the Supreme Court held that a biological opinion is a final agency action subject to judicial review under the APA, in part because "legal consequences will flow" from a BiOp. 520 U.S. 154, 178 (1997). That means that a reviewing court is empowered to "set [it] aside" upon finding it unlawful. 5 U.S.C. § 706(2)(A). It also means that a reviewing court is empowered to "prevent irreparable injury" by "issu[ing] all necessary and appropriate process to postpone its effective date . . . or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705; *see also Nw. Immigrant Rights Proj. v. U.S. Citizenship and Immigration Services*, 496 F. Supp. 3d 311, 45

(D.D.C. 2020) ("The standard of review for relief under 5 U.S.C. § 705 is the same as the standard of review for preliminary injunctions").

Here, the continuing flow of legal consequences from the FY 2020 BiOp—FWS's imprimatur for the Bear Grub and Round Oak timber sales in its capacity as consulting agency under the ESA—threatens irreparable harm and warrants preliminary relief. Intervenors muster no direct support for their argument that a biological opinion cannot be enjoined, which would turn the Supreme Court's holding in *Bennett v. Spear*—that biological opinions *are* judicially reviewable under the APA—on its head. Injunctive relief, including preliminary injunctive relief, is routinely granted in challenges to biological opinions, even where the action agency is not a named defendant. In fact, that's exactly what this Court did in *Cascadia Wildlands v. FWS*, 219 F. Supp. 2d 1142 (D. Or. 2002). It's also consistent with the practice of other courts within the Ninth Circuit. *See, e.g., Pac. Coast Fed'n of Fishermen's Ass'ns v. Nat'l Marine Fisheries Serv.*, 71 F. Supp. 2d 1063, 1073 & n.2 (W.D. Wash. 1999) (same), *aff'd in part and vacated in part on other grounds*, 265 F.3d 1028 (9th Cir. 2001).

Finally, contrary to Intervenors' assertion, (doc. 22, 12), BLM is not a "necessary party" under FED. R. CIV. P. 19(a)(1) to KS Wild's claims, which challenge the BiOp FWS prepared in its capacity as consulting agency. The Ninth Circuit has squarely rejected Intervenors' assertion, holding that action agencies are not necessary parties in BiOp challenges that seek declaratory and injunctive relief. *Pac. Coast Fed'n of Fishermen's Ass'ns*, 265 F.3d at 1034.[4] Indeed, the

---

[4] Other circuits are in accord. *See Dow AgroSciences, LLC v. Nat'l Marine Fisheries Serv.*, 637 F.3d 259, 268 (4th Cir. 2011) (action agency not a necessary party in BiOp challenge); *Rancho Viejo, LLC v. Norton*, 323 F.3d 1062, 1066 n.1 (D.C. Cir. 2003) (same); *Miccosukee Tribe of Indians of Florida v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009) (reversing and remanding district court's judgment upholding ITS in case where action agency was not a named defendant).

ESA charges consulting agencies—not action agencies—with preparing biological opinions. 16 U.S.C. § 1536(a)(2). Here, "complete relief"—vacating the BiOp and ITS and remanding it to FWS—is available without BLM's presence (in its "inexpert" stance under the ESA, *see Bennett*, 520 U.S. at 169). FED. R. CIV. P. 19(a)(1)(A). BLM has no say at all in whether FWS's consultation comports with the ESA or, for instance, what constitutes incidental take under the ESA. *See Nat'l Wildlife Fed'n v. Brownlee*, 402 F. Supp. 2d 1, 11 (D.D.C. 2005).

In sum, preliminary injunctive relief is available in this case against FWS's biological opinion, and BLM's absence in the litigation is of no consequence as it is not a necessary party to it. For these reasons, Intervenors' joinder argument lacks merit.

## IV.    Conclusion.

Given the forgoing, KS Wild urges the court to GRANT KS Wild's motion for a temporary restraining order/preliminary injunction.

Respectfully submitted and dated this 14th day of June, 2021.

/s/ Sangye Ince-Johannsen
SANGYE INCE-JOHANNSEN (OSB #193827)
Western Environmental Law Center
120 Shelton McMurphey Blvd, Ste 340
Eugene, OR 97401
(541) 778-6626 | Phone
sangyeij@westernlaw.org

SUSAN JANE BROWN (OSB #054607)
Western Environmental Law Center
Portland, OR 97232
(503) 914-1323 | Phone
brown@westernlaw.org

*Attorneys for Plaintiffs*